**Amado DE LARA BELLAJARO, Plaintiff–Appellant,**

v.

**Thomas J. SCHILTGEN, District Director of the INS, Los Angeles District Office; Immigration and Naturalization Service, Defendants–Appellees.**

No. 03–55095.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 2004.

Filed Aug. 6, 2004.

As Amended Sept. 1, 2004.

Michael Friedberg and Ronald T. Matten, Saldin & Friedberg, Los Angeles, CA, for the plaintiff-appellant.

Patricia M. Corrales–Talleda, United States Department of Justice, Civil Division, Los Angeles, CA, for the defendants-appellees.

Before: TROTT, RYMER, and THOMAS, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether a district court has jurisdiction pursuant to 8 U.S.C. § 1421(c) to review the denial of an application for naturalization when a removal proceeding is pending.

Amado De Lara Bellajaro appeals the district court's judgment that it lacked jurisdiction under § 1421(c) to hear his petition for review of an application for naturalization that was filed while he was in removal proceedings and was denied by the Immigration and Naturalization Service (INS)[1] on the basis of 8 U.S.C. § 1429, which prohibits the Attorney General from considering a naturalization application if a removal proceeding is pending. Bellajaro asked the district court to grant his application for naturalization on the merits, or alternatively, to declare that he is eligible to naturalize but for the pendency of removal proceedings. In the district court's view, § 1429 reflects Congressional intent that removal have priority over naturalization, and this intent would be frustrated if judicial review of naturalization decisions were available under § 1421(c) while the removal proceeding is pending.

We agree that Bellajaro's petition must be dismissed, but for a different reason. As we see it, § 1421(c) plainly confers jurisdiction on district courts to review any denial of an application for naturalization. However, the scope of review extends only to the determination that was actually made by the agency. Here, the agency denied Bellajaro's naturalization application on the ground that § 1429 precludes the application from being considered while removal proceedings are pending. That determination was unquestionably correct and Bellajaro does not challenge it. Beyond this, there was nothing ripe for the district court to review. Consequently, we conclude that the district court had jurisdiction under § 1421(c) to review the denial of Bellajaro's application for naturalization even though removal proceedings were pending, but the scope of that review

1. The INS ceased to exist as an independent agency and delegate of the Attorney General within the Department of Justice on March 1, 2003, when its functions, including naturalization, were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, 110 Stat. 2135 (Nov. 25, 2002). However, we refer to the agency as "INS" and to the Attorney General, as the proceedings at issue in this case took place before the transfer.

is limited to the ground for the denial. On that ground, dismissal was appropriate. Therefore, having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Bellajaro is a native and citizen of the Philippines who entered the United States on January 3, 1979 as a tourist. He married a United States citizen on May 22, 1979, and while still married to her, entered into a bigamous marriage on April 12, 1980 with an eighteen-year-old woman. That marriage was subsequently annulled. Bellajaro's status was adjusted on November 5, 1982, and he was admitted as a lawful permanent resident. In 1983, he was charged with a number of counts of Lewd or Lascivious Act Upon Child Under Fourteen, in violation of California Penal Code § 288(a), and one count of Oral Copulation Upon a Child in violation of California Penal Code § 288a(b). Bellajaro pled guilty to two counts of molesting his minor stepdaughters and was sentenced to three years imprisonment. The state court granted Bellajaro a judicial recommendation against deportation (JRAD) under 8 U.S.C. § 1251(b)(2) (renumbered in 1996 to § 1227). On account of the JRAD the INS terminated deportation proceedings that had been initiated upon Bellajaro's release from prison.

Bellajaro went to the Philippines in 1986, which violated his parole, and returned to the United States in 1990. He filed an application for naturalization with the INS office in Hawaii, but abandoned it after his arrest on a parole warrant and extradition to California. Following expiration of parole in 1994, Bellajaro filed another application for naturalization, which the INS denied because of his failure to establish good moral character. No appeal was taken.

On December 9, 1999 the INS initiated removal proceedings by issuing a Notice to Appear that charged Bellajaro with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony after admission. In January 2000, Bellajaro filed a third application for naturalization and moved to terminate the removal proceedings so that he could proceed with his naturalization application. The motion was denied. On August 2, 2001, the INS denied Bellajaro's naturalization application and Bellajaro filed an administrative appeal, requesting and receiving a hearing pursuant to 8 U.S.C. § 1447(a). Following that hearing, the agency issued its final decision denying the application on the ground that Bellajaro was ineligible for naturalization because removal proceedings were pending and under § 1429, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding."

Bellajaro then filed suit in district court seeking a de novo hearing on the merits of his application for naturalization, a finding of eligibility for naturalization, and an order granting his naturalization application or alternatively, a declaration that he is eligible to naturalize but for the pending removal proceedings. The INS moved for summary judgment, asserting that the district court lacked subject-matter jurisdiction to review the naturalization application under § 1421(c) because Congress intended in § 1429 to limit the Attorney General *and* the jurisdiction of the district court when an alien is in removal proceedings. The district court agreed, and entered judgment for the INS.

Bellajaro timely appeals.

## II

Bellajaro contends that he must have this opportunity for judicial review because

otherwise, the government would always be in a position to circumvent it by placing an applicant in removal proceedings, and, in addition, he should have the chance to establish his good moral character. The INS counters that § 1429 gives priority to removal proceedings over naturalization proceedings, so Congress must have intended not to give district courts jurisdiction to review the denial of a naturalization application while an alien is in removal proceedings.[2]

This dispute exists in large part because of changes that were made to the naturalization process in 1952 and 1990. Before 1990, district courts had authority to naturalize, while authority to deport (or in current terminology, to "remove") aliens was vested in the Attorney General. This differentiation of function gave rise to a "race between the alien to gain citizenship and the Attorney General to deport...." *Shomberg v. United States*, 348 U.S. 540, 544, 75 S.Ct. 509, 99 L.Ed. 624 (1955). Section 1429 was enacted in 1952 to put an end to the race. It provided that "no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding...." 8 U.S.C. § 1429 (1952). Then in 1990, Congress decided to vest all authority to naturalize in the Attorney General, 8 U.S.C. § 1421(a), and conformed § 1429 by changing "a naturalization court" to "the Attorney General" so that § 1429 now reads:

> [N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act: *Provided,* That the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this chapter, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter.

8 U.S.C. § 1429 (1990). At the same time that § 1421(a) was adopted and § 1429 was amended, Congress provided for judicial review in § 1421(c):

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

We have recognized that "[t]he natural reading of [§ 1429] is that removal proceedings and final removal orders are to take precedence over naturalization applications." *Perdomo–Padilla v. Ashcroft*, 333 F.3d 964, 970 (9th Cir.2003). However, we have not yet decided how the priority provision and the provision for judicial review play out when judicial review of a denial is sought while removal proceedings are pending. Courts confronted with the

---

**2.** The INS also urges us to give *Chevron* deference to its position, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which we decline to do as we are not persuaded that deference is merited for the agency's litigation position in this case. *See, e.g., Ashoff v. City of Ukiah,* 130 F.3d 409, 411 (9th Cir.1997) (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).

issue have reached different conclusions. Some have concluded that the purpose of § 1429—to give priority to removal over naturalization—weighs against district court jurisdiction over naturalization under § 1421(c) when removal proceedings are pending. Those adopting this view rely heavily on pre–1990 law, in particular the Third Circuit's opinion in *Petition for Naturalization of Terzich*, 256 F.2d 197 (3d Cir.1958), which interpreted the 1952 version of § 1429 as forbidding courts (then the naturalizing authority) from considering naturalization applications of aliens who were in deportation proceedings.[3]

Others, including the Sixth Circuit in its recent opinion in *Zayed v. United States*, 368 F.3d 902 (6th Cir.2004), interpret § 1429 as limiting the scope of review and the relief available, but not as stripping district courts of jurisdiction solely because removal proceedings are pending.[4] We are convinced that this view is correct.

Section 1421(c) plainly confers jurisdiction to review the denial of an application for naturalization on district courts. Nothing in the text limits the jurisdiction so conferred to review of denials when there is no removal proceeding pending. By the same token, the text of § 1429—which does constrain consideration of naturalization applications during the pendency of a removal proceeding—clearly applies to the Attorney General. There is no hint in the language of § 1429 that it also applies to the courts. Thus, we see no textual basis for concluding that jurisdiction vested in district courts by § 1421(c) is divested by § 1429.

However, this does not mean that § 1429 has no bearing on the scope of judicial review. When an application is denied, § 1421(c) makes judicial review available for "such" denial. Here, the Attorney General denied Bellajaro's application on the ground that it could not be considered under § 1429 because a removal proceeding was pending. Section 1421 jurisdiction exists to review *such* denial. However, Bellajaro doesn't contest the ground for that denial; rather, he wants the district court to consider his application on the merits, that is, to determine that he has good moral character and is entitled to naturalization. This is a determination that the Attorney General has not yet made because of § 1429, and it is one that the district courts, which no longer have authority to naturalize, can not make in the first instance. Accordingly, we conclude that where, as in Bellajaro's case, the INS has denied an application for naturalization on the basis of § 1429 because removal proceedings are pending,

---

3. *See, e.g., Tellez v. INS*, 91 F.Supp.2d 1356, 1360–62 (C.D.Cal.2000) (discussing *Terzich* and holding that the court currently lacked jurisdiction because the alien's naturalization application was ongoing); *Mosleh v. Strapp*, 992 F.Supp. 874, 876 (N.D.Tex.1998) (applying *Terzich*). The Third Circuit has since questioned the continuing force of its own authority. *Apokarina v. Ashcroft*, 93 Fed. Appx. 469, 2004 WL 742286 (3d Cir.2004) (unpublished). In *Apokarina* the district court relied on *Terzich* and *Tellez* to hold that Congress intended to divest the courts of jurisdiction. 232 F.Supp.2d 414, 415–18 & 416 n. 10 (E.D.Pa.2002). The court of appeals reversed and remanded for reconsideration in light of the 1990 amendments.

4. *See, e.g., Grewal v. Ashcroft*, 301 F.Supp.2d 692, 696 (N.D.Ohio 2004) (noting that to divest district courts of jurisdiction is particularly problematic when the removal proceeding was initiated after the alien's application for naturalization was denied and he had filed a petition for review in the district court); *Ngwana v. Attorney Gen. of the United States*, 40 F.Supp.2d 319, 321 (D.Md.1999) (recognizing district court jurisdiction to review a merits-based denial of an application); *Gatcliffe v. Reno*, 23 F.Supp.2d 581, 582–83 (D.Vi.1998) (same).

the district courts have jurisdiction to review the denial but the scope of review is limited to "such" denial. *See Zayed,* 368 F.3d at 906(noting that "[w]here the INS has denied an application for naturalization on the ground that removal proceedings are pending, ... the district court's de novo review is limited to review of that threshold determination.").

Bellajaro maintains that even if this is so and the district court lacks jurisdiction at this stage to decide that he is *entitled* to naturalization, still the court should be able to declare that he is *eligible* for naturalization but for the pendency of removal proceedings. He contends that a declaration of prima facie eligibility would buttress a request that he would like to renew before the agency to terminate removal proceedings so that his application for naturalization may be considered on the merits. However, this seems purely advisory to us, for discretion to prosecute and to adjudicate removal proceedings is reposed exclusively in the Attorney General. *See Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 487, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); 8 U.S.C. § 1252(a)(2)(B) & (g) (limiting judicial review of the Attorney General's discretionary decisions to initiate or adjudicate removal proceedings). Bellajaro's only argument to the contrary is that prima facie eligibility findings by district courts were appropriate under *In re Cruz,* 15 I. & N. Dec. 236 (BIA 1975), and continue to be relevant under regulations that allow termination of proceedings when the alien has established prima facie eligibility and humanitarian factors are exceptionally appealing. *See* 8 C.F.R. § 239.2(f) (2003 ed.).[5] However, *Cruz*

arose under the pre–1990 regime where district courts had the ultimate power to naturalize. In that context, the BIA held that prima facie eligibility could be established either by a communication from the INS or by a declaration of a court. We doubt that *Cruz* remains good law given that courts no longer naturalize, but regardless, the BIA cannot confer jurisdiction on the federal courts, or enlarge the scope of review, beyond that granted by Congress.

Bellajaro's remaining argument is that triable issues of fact exist which preclude summary judgment, but they have to do with whether he is of good moral character—not whether the INS correctly denied his naturalization application on the ground that removal proceedings are pending. As this is the only issue properly presented, and Bellajaro concedes that it was correctly resolved at the administrative level, judgment was appropriately entered.

We hold that district courts have jurisdiction pursuant to § 1421(c) to review the denial of an application for naturalization whether or not a removal proceeding is pending, but that the scope of review is limited to "such" denial. When the administrative denial is based on § 1429, judicial review is limited to that determination. This reflects the plain meaning of the text, and rationalizes the judicial review provision of § 1421(c) with the priority provision of § 1429 in the circumstances of this case.

AFFIRMED.

---

**5.** Section 239.2(f) has been moved and renumbered section 1239.2(f) in the 2004 edition of the regulations.